## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| DAVID MONTES | § | |
| | § | |
| VS. | § | CIVIL NO. 3:13-CV-1936-K |
| | § | (CRIMINAL NO.3:09-CR-286-K(4)) |
| | § | |
| UNITED STATES OF AMERICA | § | |

### MEMORANDUM OPINION AND ORDER
### RESOLVING MOTION UNDER 28 U.S.C. § 2255

Now pending before this Court is the motion for relief under 28 U.S.C. § 2255 filed by defendant David Montes. Montes later supported the § 2255 motion with his May 20, 2013 Declaration under penalty of perjury. The government filed a motion to dismiss the motion under § 2255 on the basis that it is barred by limitations. Montes filed a response. The Court then directed the government to file an answer, and in that document the government included additional arguments related to the limitations issue, and a response to the § 2255 motion on the merits. Montes then filed a reply. After careful consideration and review of defendant Montes's motion under § 2255, the supporting declaration, the motion to dismiss, Montes's response, the government's substantive response, Montes's reply, and the applicable law, the Court concludes that Montes's motion under 28 U.S.C. § 2255 must be dismissed as barred by limitations, and alternatively, denied on the merits.

## I.  Limitations

Title 28 U.S.C. § 2255(f) provides that:

A 1-year period of limitation shall apply to a motion under [§ 2255].  The limitation period shall run from the latest of–
      (1) the date on which the judgment of conviction becomes final;
      (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United Sates is removed, if the movant was prevented from making a motion by such governmental action;
      (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
      (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
28 U.S.C.A. § 2255(f)(1)-(4)(West Supp. 2014).

Montes was convicted of one count of conspiracy to possess with the intent to distribute and distribution of more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) & 841(b)(1)(A), in a judgment of conviction entered on December 17, 2010. Montes appealed his conviction, but after appointed counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967), the United States Court of Appeals for the Fifth Circuit dismissed the appeal as frivolous. *United States v. Montes,* 461 F. App'x 382, 2012 WL 555551 (5th Cir. Feb. 17, 2012). Although Montes did not seek certiorari review, his judgment of conviction was not final for purposes of § 2255(f)(1) until the 90 day time to seek such review expired. *See Clay v. United States*, 537 U.S. 522, 532 (2003). The judgment of the court of appeals was entered on

February 17, 2002, and ninety days after entry of that judgment was though May 17, 2012. *See* Sup. Ct. R. 13(1).  July 2012 had 29 days,  so the 90 days after February 17 included 12 days in February, 31 days in March, 30 days in April, and 17 days in May. Thus, Montes had until May 17, 2013 to timely file a § 2255 motion in accordance with § 2255 (f)(1).

A pro se prisoner's habeas corpus petition or § 2255 motion is constructively filed, for the purposes of the limitations analysis, when the prisoner delivers the papers to prison authorities for mailing to the district court. *United States v. Patterson,* 211 F.3d 927, 930 (5th Cir. 2000) (*citing Spotville v. Cain,* 149 F.3d 374, 378 (5th Cir. 1998)(context of the timeliness of a 28 U.S.C. § 2254 petition)). Although the clerk of Court received and filed Montes's § 2255 motion on May 22, 2013, Montes executed the § 2255 motion on May 20, 2013. (§ 2255 Motion (ECF No.2) at 9.) In his response to the government's motion to dismiss, Montes admitted that he constructively filed the motion on May 20, 2013. (Montes's Response (ECF  No. 9) at 3.) Thus, Montes's motion was filed three days after the applicable one-year deadline.

Montes argues that his judgment became final on the ninety-first day (May 18, 2012), rather than the ninetieth day after the Fifth Circuit dismissed his appeal on February 17, 2012 (May 17, 2012). (ECF No. 9, at 2-3.)  Montes is wrong.  As the Supreme Court held, "for federal defendants who do not file a petition for certiorari with [the Supreme Court] on direct review, § 2255's one year-limitation period starts to run

when the time for seeking such review expires," that is "90 days after entry of the Court of Appeals' judgment." *Clay*, 537 U.S. at 525 and 532.

Montes appears to base his argument that the period for filing a certiorari petition expires on the 91st day after a direct appeal is decided, from the underlying date calculations within the *Clay* decision. In *Clay*, the United States Court of Appeals for the Seventh Circuit affirmed the petitioner's conviction on November 23, 1998. The time for filing a petition for writ of certiorari expired on February 22, 1999--91 days later. This one-day extension, however, resulted from the fact that the ninetieth day, February 21, 1999, was a Sunday. *See* Fed. R. Civ. P. 6(a)(1)(c)(if the last day of a time period is a Saturday, Sunday or legal holiday, the period "continues to run until the end of the next day that is not a Saturday, Sunday or legal holiday"). In this case, the ninetieth day, May 17, 2012, fell on a Thursday. Thus, Rule 6(a)(1)(c) does not apply to Montes's date calculation.

Thus, Montes's judgment became final, and § 2255's one-year limitation began to run, on May 17, 2012--90 days after the Fifth Circuit's judgment on February 17, 2012. *See e.g., United States v. Gentry*, 432 F.3d 600, 604 & n.2 (5th Cir. 2005) (holding that "[defendant's] conviction because final . . . 90 days after we dismissed her appeal . . . ."); *Harrelson v. United States,* No. 7:11-CV-112-O (No.7:05-CR-018-O), 2012 WL 2674559, at *1 (N.D. Tex. July 3, 2012)(for purposes of statute of limitations, defendant's conviction was final 90 days after December 10, 2008 date the court of

-4-

appeals dismissed direct appeal, or March 10, 2009); *United States v. Hawkins,* No. 03-194-JVP-SCR, 2008 WL 360685, *2 (M.D. La. Feb. 8, 2008) (because petitioner did not file a petition for writ of certiorari, his conviction became final 90 days after the August 2, 2005 entry of the judgment of the court of appeals, or on October 31, 2005). Montes had until May 17, 2013 to file his § 2255 motion, but he constructively filed it on May 20, 2013, three days too late.

The one-year limitation period for filing a petition under § 2255 is also subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645-46 (2010); *see United States v. Redd*, 562 F.3d 309, 314 (5th Cir. 2009) (equitable tolling of § 2255 petition); *Patterson,* 211 F.3d at  930 (equitable tolling applies to the § 2255 limitation provision) (citing *Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir. 1998). But, the burden is on the petitioner---here, Montes---to show rare, exceptional,  or extraordinary circumstances beyond his control that made it impossible for him to timely file a § 2255 petition. *See Holland*, 560 U.S. at 649 (stating petitioner must show "'extraordinary circumstances stood in his way and prevented timely filing'") (quoting *Pace v. DiGuglelmo,* 544 U.S. 408, 418 (2005)); *see also United States v. Jackson*, 470 F. App'x 324, 329 (5th Cir. 2012) ("Equitable tolling is permissible only in rare and exceptional circumstances") (quoting *United States v. Wynn,* 292 F.3d 225, 230 (5th Cir. 2002).  Montes does not argue that he was prevented from timely filing, and there is no factual evidence whatsoever that he

was prevented in some extraordinary way from timely asserting his rights. Montes is not entitled to equitable tolling.

Therefore, the government's motion to dismiss the motion under 28 U.S.C. § 2255 will be granted, and Montes's motion for relief under 28 U.S.C. § 2255 dismissed with prejudice.

## II .Alternative Consideration of the § 2255 Motion on the Merits

A. Grounds For Relief

David Montes seeks relief under 28 U.S.C. § 2255 on the basis that his counsel provided ineffective assistance of counsel during the plea and sentencing proceedings by: (1) failing to conduct a reasonable investigation; (2) failing to inform him of the relevant law, available options, and possible consequences; (3) withholding defense services unless Montes would pay him additional money beyond the payments available under the Criminal Justice Reform Act (CJRA); (4) failing to pursue a cooperation strategy with the government; (5) failing to pursue a safety-valve reduction; (6) failing to test the drugs and present arguments as to purity; (7) failing to object to a gun-enhancement; (8) failing to review the Presentence Report (PSR) with him; (9) failing to disclose to the Court a conflict of interest arising from the withholding of defense services; (10) failing to ask the Court to conduct an inquiry regarding a conflict of interest; and (11) failing to remedy any prejudice. (§ 2255 Motion at 6.) In a second ground, Montes alleges all of the grounds above rose to an actual conflict of interest. (§ 2255 Motion at 6.) The

Court will first address the claims numbered by Montes as 1, 2, 4, 5, 6, 7, and 8. The Court will then turn to considering together all of Montes claims relating to the alleged withholding of defense services and conflict of interest issues allegedly arising therefrom, numbered by Montes as 3, 9, 10, and 11.

B. Facts and Procedural History

Montes's conviction resulted from his plea of guilty to one count of conspiracy to distribute methamphetamine, pursuant to a plea agreement and facts admitted in a factual resume. (Factual Resume (FR) and Plea Agreement, Criminal Docket (CR) 77 and 78.)  Montes stipulated that for several years continuing until the fall of 2009, he knowingly and intentionally conspired with a number of other co-conspirators to possess with the intent to distribute more than 500 grams of methamphetamine. (FR. at 2.) During the course of the conspiracy Montes obtained methamphetamine from Valente Rodriguez-Lopez, who imported the drugs from Mexico and then directed others to deliver methamphetamine to customers, including Montes. (FR. at 2.)

In November 2005, Texas Department of Public Safety officers stopped a vehicle in Amarillo, Texas driven by Willard Ray Hudson but registered to Montes. (PSR ¶ 17.) After Hudson consented to a search of the vehicle, troopers located 24 bundles of methamphetamine, weighing 12.55 kilograms. *Id.* Hudson informed the officers that Montes had asked him to drive to Santa Ana, California to pick up the shipment of methamphetamine in exchange for $8,000. *Id.* In April 2007, Drug Enforcement

Administration (DEA) agents learned that a parcel containing methamphetamine was destined for Montes's residence in Dallas, Texas. They intercepted the package, which contained 4.39 kilograms of methamphetamine. (PSR ¶ 18.)  On October 21, 2009, agents executed a search warrant at Montes's home where they found approximately two pounds (.90 kilograms) of methamphetamine and a black Revelation shotgun.(FR at 2; PSR ¶ 19.)

At all proceedings before this Court, Montes was represented by attorney John Nation.  Nation first appeared on Montes's behalf as retained counsel. (CR doc. 11-13.) After counsel reported to the Court that Montes had failed to pay the agreed upon fees, and moved for appointment, this Court then appointed Nation to represent Montes. (CR docs. 57, 61.)

The PSR prepared for Montes's case held him accountable for 17.84 kilograms of methamphetamine, consisting of the 12.55 kilograms seized in November 2005, the 4.39 kilograms seized in April 2007, and the .90 kilograms seized in October 2009. (PSR ¶¶ 17-20, 27.)  The 17.84 kilograms resulted in a base offense level of 38. (PSR ¶ 27.) Two points each were added for a dangerous weapon enhancement, an unlawful-importation enhancement, and for an aggravating role. (PSR ¶¶ 28-31.)  After reducing the offense level by three points for Montes's acceptance of responsibility, the total offense level was 41. (PSR ¶¶ 33-34.)  This, combined with a criminal history category of III, resulted in a guideline range of 360 months to life in prison. (PSR ¶ 67.)

Counsel filed objections to the weapon and aggravating role enhancements. (CR No. 135, at 2-4.) A subsequent addendum to the PSR rejected Montes's objections, and at the sentencing hearing, the Court overruled Montes's objections and adopted the findings of the PSR, as amended, as the findings of the Court. (December 15, 2010 Sentencing Transcript (Sent. Tr.) at 13.) The government filed a motion under USSG § 5K1.1 based on Montes's substantial cooperation and recommended a four-level downward departure from the offense level of the applicable guidelines, which would result in a guideline range of 262 to 327 months' imprisonment. (CR. Doc. 163.) Attorney Nation argued for an even greater downward departure based on Montes's assistance. (Sent. Tr. at 11-13.) The Court granted the government's motion and imposed a term of 144 months imprisonment. (Sent. Tr. at 13.)

C. Analysis

All of Montes's claims allege ineffective assistance of counsel. The familiar two-pronged standard for review of ineffective-assistance-of-counsel claims was set forth by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

-9-

*Strickland,* 466 U.S. at 687. The burden is on the defendant to showing that his counsel's representation fell below an objective standard of reasonableness by identifying acts or omissions of counsel "that are . . . not . . . the result of reasonable professional judgment." *Id.* at 690. A district court then determines whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* There is a strong presumption that the performance of counsel "falls within the wide range of reasonable professional assistance." *United States v. Samuels,* 59 F.3d 526, 529 (5th Cir. 1995); *see also King v. Lynaugh,* 868 F.2d 1400, 1405 (5th Cir. 1989). A defendant must also affirmatively prove prejudice by showing that a particular error of counsel actually had an adverse effect on the defense, an adverse effect being shown, in turn, by demonstrating a "reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* at 694 (general discussion at pp. 691-695). This showing "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster,* 131 S.Ct. 1388, 1403 (2011)(citing *Harrington v. Richter,* 131 S.Ct. 770, 791 (2011)).

"Recognizing the 'temptation for a defendant to second-guess counsel's assistance after conviction or adverse sentence,'" the Supreme Court recently re-emphasized "that counsel should be 'strongly presumed to have rendered adequate assistance and make all significant decisions in exercise of reasonable professional judgment.'" *Pinholster,* 131

S.Ct. at 1403 (citing *Strickland,* 466 U.S. at 690)).  The Supreme Court also cautioned that ineffective-assistance claims "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial . . . ." *Harrington v. Richter,* 131 S.Ct. 770, 788 (2011). Thus, the high court admonished that "the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.'" *Id.* (citing *Strickland,* 466 U.S. at 689-690).

    *1. Failure to Investigate*

    "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."  *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)(citations omitted). Here, although Montes alleges that counsel failed to conduct a prompt and reasonable factual and legal investigation, he fails to allege what the investigation would have revealed and how it would have altered his decision to plead guilty. "[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citation omitted). Such allegations "make it very difficult to assess whether counsel's performance was deficient and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance," and accordingly fail to reach the *Strickland* standards. *Anderson v. Collins,* 18 F.3d 1208, 1221

(5th Cir. 1994) (quoting *United States ex re. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991)).

Further, the record undermines Montes's conclusory allegations. In spite of significant evidence of Montes's guilt in trafficking in substantial amounts of methamphetamine, defense counsel was able to pursue and secure a § 5K1.1 motion from the government based on Montes's substantial assistance, enabling Montes to receive a much lower sentence than he might have otherwise received. (Sent. Tr. at 13.) Because Montes's allegations include no specific facts that show deficient performance or resulting prejudice, the claim based upon counsel's alleged failure to investigate is denied.

### 2. Failure to Inform of Application of Law to Facts

As with the failure-to-investigate claim, Montes's assertion that Nation failed to inform him of the relevant law, available options, and possible consequences is conclusory and refuted by the record.  Montes fails to allege what law, options, or consequences his lawyer failed to inform him of and how such information would have affected his decision to plead guilty. *See generally Green*, 882 F.2d at 1003 (where defendant alleges his counsel failed to act, he must alleges with specificity what the action would have revealed and how it would have altered the outcome of the trial).

Further, the record refutes this claim. At the rearraignment hearing, Montes testified that he had a "full opportunity to talk to [his attorney] about [his] case," his

-12-

proposed plea of guilty, the sentencing guidelines, and the sentencing process. (April 9, 2010 Rearraignment Transcript (Rearraignment Tr.) at 6-8.)  He also testified that he was "fully satisfied with the representation and advice that [he had] gotten from Mr. Nation in connection with [his] case and [his] proposed plea of guilty." (*Id.* at 8.) Montes also signed to the plea agreement acknowledging that he had "thoroughly reviewed all legal and factual aspects of this case with his lawyer and is fully satisfied with that lawyer's legal representation." (CR doc. 78, at 5 ¶ 11.)  Montes also admitted he had "received from his lawyer explanations satisfactory to him concerning each paragraph of this plea agreement, each of his rights affected by this agreement, and the alternatives available to him other than entering into this agreement." (*Id.*)

"Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74 (1977).  Great weight is also accorded to plea documents. *See United States v. Abreo,* 30 F. 3d 29, 32 (5th Cir. 1994). Montes's after-the-fact, conclusory allegations and recantations cannot overcome the weight of this evidence. The claim that counsel failed to inform Montes of the relevant law, options, and consequences is denied.

### 4. Failure to Pursue a Cooperation Strategy

Montes asserts that his counsel failed to consult with him before the proffer from the government, and provided him "little to no assistance" in connection with his efforts in offering substantial assistance to the government. (Montes Declaration (Decl.) ¶¶ 37-

38.)  He also asserts that he "had more information to provide to the government," but "did not understand the process nor what [he] truly needed to do to maximize [his] chances to obtain a better sentence." (Decl. ¶ 40.)  Montes, however, fails to allege what additional information he would have provided to the government or what he would have done differently if his attorney had provided him with "more assistance."

The record belies this claim.  The government filed a § 5K1.1 motion, stating therein that Montes, "though his attorney," expressed a desire to cooperate. (Gov. 5K1.1 Mot. at 1-2.) That motion also shows that Montes pursued a cooperation strategy from the very beginning and appeared to focus on providing as much accurate and useful information to the government as possible. (*Id.*). Further, during sentencing, counsel noted that Montes "was frank about his involvement" and engaged in two to three sessions with the government. (Sent. Tr. at 11.) Indeed, the defense's cooperation strategy was ultimately successful, as noted above, the Court granted the government's motion and substantially departed downward from the guideline range. (Sent Tr. at 3, 13.)  Thus, Montes's claim that counsel failed to pursue a cooperation strategy is denied.

### 5. Failure to Seek a Safety Valve Reduction

Montes claims that his attorney failed to help him obtain a safety valve reduction. But counsel "cannot be deficient for failing to press a frivolous point." *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (citing *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)). The safety-valve provision of 18 U.S.C. § 3553(f), incorporated within the

sentencing guidelines at USSG § 5C1.2, allows a court to impose a sentence below the statutory minimum sentence if the court finds that the defendant has met certain enumerated requirements, including: (i) he did not have more than one criminal history point; (ii) he did not possess a firearm in connection with the offense; and (iii) he was not a manager or supervisor. 18 U.S.C. § 3553(f); USSG § 5C1.2.

Montes was ineligible for a safety-valve reduction for several reasons: his criminal history score of III (PSR ¶¶ 37-39); his possession of a firearm (PSR ¶28; PSR Addendum; Sent. Tr. at 4,13); and his status as a manager or supervisor (PSR ¶ 31 ; PSR Addendum; Sent. Tr. at 4-5, 13). *See United States v. Jasso*, 634 F.3d 305, 308 (5th Cir. 2011) ("[defendant's] two criminal history points rendered him ineligible for safety valve relief under the relevant statutory and Guidelines provisions"); *United States v. Vasquez*, 161 F.3d 909, 911 (5th Cir. 1998)(noting that district court's finding that defendant possessed a firearm for § 2D1.1(b)(1) purposes disqualified defendant from being eligible for the safety valve provision); *United States v. Cardona*, 258 F. App'x 700, 701 (5th Cir. 2007) (holding that where district court found defendant was a manager or supervisor under § 3B1.1(b), he was ineligible for a safety valve reduction) (citing USSG § 5C1.2(a)(4)). Because Montes was ineligible for the safety-valve reduction, his counsel could not have been deficient for failing to press for the reduction.

*6. Failure to Test and Challenge the Purity of the Drugs*

Montes alleges his lawyer should have tested the methamphetamine and presented arguments challenging the purity in support of a lower offense level under USSG § 2D1.1 because "the drugs seized contained mostly cut and not pure methamphetamine." (§ 2255 Mot. at 6; Montes Decl. ¶ 46.) But, as noted above, the PSR held Montes accountable for 17.84 kilograms of Ice methamphetamine. (PSR ¶¶ 17-20, 27.) A base offense level of 38 applies to only "1.5 kilograms or more" of Ice methamphetamine. As Montes was held responsible for over 10 times that amount of Ice methamphetamine, he states no facts of how any testing would have changed that calculation.

Furthermore, "methamphetamine sentencing [is] based upon the total weight of a mixture without regard to its purity." *United States v. Cartwright*, 6 F.3d 294, 304 (5th Cir. 1993) (citing *United States v. Sherrod*, 964 F.2d 1501, 1509-10 (5th Cir. 1992)). In this regard, the drug quantity table provides that "[u]nless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." USSG § 2D1.1(c) at Note A. Accordingly, under section 2D1.1, "15 KG or more of Methamphetamine" was inclusive of "a mixture or substance containing a detectable amount of methamphetamine" and properly resulted in an offense level of 38. *See* USSG

§ 2D1.1(c). Regardless of the ultimate purity of the 17.84 kilograms of seized Ice methamphetamine, Montes's base offense level was correctly calculated at 38.

Thus, the claim that counsel was ineffective for failing to challenge the purity of the drugs is denied. *See Sones,* 61 F.3d at n.5 (counsel not faulted for failing to pursue a frivolous point).

*7. Failure to Object to the Gun Enhancement*

Although Montes claims that counsel failed to object to an enhancement for a firearm, the records shows that counsel did file an objection. (Cr. Doc. 135, Objections at 2; Sent. Tr. at 3.) The court overruled the objections and adopted the findings of the PSR as amended. (Sent. Tr. at 13.) Counsel cannot be deficient simply because his efforts were unsuccessful. *See Youngblood v. Maggio,* 696 F.2d 407, 410 (5th Cir. 1983).

Montes also contends that counsel was deficient for failing to argue that the gun was inoperable, not readily accessible, unloaded, and had never been discharged. (Montes Decl. ¶ 44 (a-d).) Even if the gun was inoperable, unloaded, and had never been discharged by Montes, such facts do not preclude application of the enhancement for a dangerous weapon under USSG § 2D1.1(b)(1). "Section 2D1.1(b)(1) was designed to provide added punishment for those drug offenders who heighten the danger inherent in drug trafficking by possession of dangerous weapons [because ] . . . the mere presence of a [firearm] can escalate the danger inherent in such situations." *United States v. Paulk,* 917 F.2d 879, 882 (5th Cir. 1990). In *Paulk,* the court of appeals determined that since

the presence of a gun instills fear in the average citizen and, as a consequence, creates an immediate danger of a violent response, the enhancement is applicable even to inoperable, unloaded, or never-previously fired firearms. *See Id.* (holding that district court was not clearly erroneous in applying the enhancement to an inoperable gun).

Furthermore, regardless of whether the gun was "readily accessible," the record supports a sufficient nexus between the gun and drug-trafficking activity for purposes of § 2D1.1(b)(1). The gun was found in the garage–-the same area where the methamphetamine was seized. (Sent. Tr. at 4; PSR ¶¶ 19, 28; PSR Addendum.) *See Vasquez*, 161 F.3d at 912 (noting that the enhancement is appropriately applied where the weapon was found in same location as the drugs); *United States v. Gonzales*, 458 F. App'x 381, 382 (5th Cir. 2012) (upholding application of the enhancement where firearms were found in a locked safe in a bedroom adjacent to the garage containing the drugs). Accordingly, because the arguments Montes raises against the gun enhancement are meritless, his attorney cannot have been deficient for failing to make them.

8. *Failure to Review the PSR with Defendant*

Montes's claim that his attorney failed to review the PSR with him is refuted by the record. At the sentencing hearing, Montes testified that attorney Nation had reviewed and explained the PSR to him. (Sent. Tr. at 7-9.) He did state that while his attorney had explained the PSR to him, he had not actually seen the document. (Sent. Tr. at 9.) But the Court then asked him if he wanted to "wait and see a document," to

which Montes responded "[n]o, [that he was] ready" to go forward with sentencing. (Sent. Tr. at 9.) Moreover, Montes has failed to show how he was prejudiced by any asserted failure to see the PSR, where the record indicates that he does not read or understand the English language (Rearraignment Tr. at 2); the PSR is written in English; and his attorney had the PSR read and translated line-by-line to Montes in Spanish and further explained the PSR to Montes with the assistance of an interpreter. (Sent. Tr. at 7-9.) Montes's challenge to whether counsel reviewed the PSR with him is denied.

### 3. Withholding of Defense Counsel Services for Lack of Payment

Montes alleges that after the Court appointed counsel John Nation as his attorney, Nation demanded payment from him and withheld legal services when he could not pay. (§ 2255 Mot. at 6; Montes Decl. ¶¶ 16-28, 33.) Other than his own statement, Montes identifies no other evidence of this claim. In his reply to the government's response, Montes asks for a hearing on this claim, alleging that his wife Dulce also was contacted by attorney Nation regarding fee payment. (Motes Reply (doc. 15) at 4.) But Montes does not present any affidavit or declaration of his wife or any other third party, and thus he fails to present any evidence to substantiate his now self-serving claims. *See generally United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998) (noting that if defendant's claim of ineffective assistance of counsel during plea proceedings is inconsistent with the bulk of her conduct or the record, and is not

supported by independent evidence, no hearing is required for the court to reject the claim). Thus, no hearing is required.

Montes alleges that Nation requested payment from him in March 2009--*before* he was indicted and Nation entered an appearance on his behalf in October 2009. (Montes Decl. ¶ 16; CR docs. 1, 13.) Thus, on these dates, even if such a request was made, it was not improper and cannot be a ground for relief under § 2255. *See Doucette v. United States,* 1:06-CV-666, 2010 WL 1257756, at *3 (E.D. Tex. March 5, 2010)(holding that it was not improper for counsel to indicate a willingness to represent the defendant on retained basis if he had sufficient funds, since,  at the time, counsel was not defendant's appointed counsel), *rep. and rec. adopted,* 2010 WL 1257754 (E.D. Tex. March 25, ,2010).

Assuming that Montes inadvertently misstated the March 2009 date in his declaration and meant to allege another point in time  after Nation's appointment, the record refutes Montes's allegations.  Nation did not at any pont withhold legal services. At the rearraignment hearing, Montes testified that he had fully discussed his case and his proposed guilty plea, as well as the plea agreement and factual resume, with Nation, and that he was "fully satisfied with the representation and advice that [he had] gotten from Mr. Nation." (Rearraignment Tr. at 8, 10, and 15.) Nation provided legal services throughout the ensuing sentencing process. He represented Montes when the probation officer interviewed him in preparation for the PSR. (PSR ¶ 47.)  Nation then visited

Montes several times in prison with an interpreter to have the PSR read to Montes in Spanish and to explain the PSR and the sentencing process. (Sent. Tr. at 7.)  Nation also filed objections to the PSR, and communicated with the government to pursue a cooperation strategy. (Cr. doc. 135; Gov. 5K1.1 Mot. at 2 (noting that "Montes, through his attorney, expressed a desire to continue to cooperate").  Finally at the sentencing hearing, Nation argued for a downward departure beyond that recommended by the government in the § 5K1.1 motion and diffused a tense situation after this Court admonished Montes for making a misleading statement during sentencing (Sent Tr. at 7-12.)

To the extent the Court reviews Montes's allegations as a claim that Nation withheld his legal services by not performing at a reasonably competent level, such a claim effectively becomes a re-statement of his previously considered bases for ineffective assistance of counsel, and fails for the reasons already set forth.

A review of the record also undercuts Montes's allegation that Nation demanded payment after his appointment. By his own declaration, Montes knew he had a right to appointed counsel if he could not afford to retain an attorney. (Montes Decl. ¶ 12.)  Yet, when his appointed counsel allegedly began demanding compensation, Montes said nothing.  To the contrary, he indicated he was fully satisfied with his attorney's representation. (Rearraignment Tr. at 8.)  Montes's failure to timely raise these concern to the Court when they allegedly took place—together with Nation's continued

representation of him in direct contradiction of Montes's allegations—conclusively disproves Montes's bald allegations. *See Friedman v. United States*, 588 F.2d 1010, 1017 (5th Cir. 1979) (although requiring hearing on allegations that court-appointed attorney demanded payment supported by evidence and record that allegations were made prior to conviction, noting that "merely conclusory assertions [that court-appointed counsel demanded an additional fee], raised for the first time in the motion for post-conviction relief" may be dismissed without a hearing.)

Furthermore, even if the record does not conclusively refute that Nation requested payment after his court appointment, that allegation, standing alone, fails to show ineffective assistance of counsel. An allegation that court-appointed counsel demanded a fee from the defendant does not, on its own, establish ineffective assistance of counsel. *See Friedman*, 588 F.2d at 1016; *see also Harris v. Housewright*, 697 F.2d 202, 206 (8th Cir. 1982) ("The request for payment [although improper] does not, however, independently establish ineffective assistance of counsel"), *overruled on other grounds*, *Girtman v. Lockhart*, 942 F.2d 468, 475 (8th Cir. 1991).  While it may have been unethical or improper for appointed counsel to request a fee, the alleged request for payment  itself does not show unreasonably deficient performance. *See Harris,* 697 F.2d at 206; *see also United States v. Gonzalez*, No. C-06-445, 2007 WL 4190769, at * 5 (S.D. Tex. Nov. 20, 2007) ("While it may have been unethical or improper for [counsel] to accept the fee, [the defendant]

has not alleged or shown that the circumstances surrounding the fee affected [counsel's] representation of him or violated his constitutional right to counsel".)

As resolved above, the record refutes Montes's allegation that Nation withheld legal services or provided deficient services.  Accordingly, even if the record does not conclusively refute Montes's allegations that Nation sought payment after appointment, because Montes failed to show deficient performance and prejudice, such request is insufficient to state a claim for relief under § 2255. *See Gonzalez*, 2007 WL 41290769, at * 8 ("Having failed to show deficiency and prejudice, the payment of the fee [to appointed counsel] is not a ground for relief under § 2255.")

*9,10, and 11 and Ground B -Conflict of Interest Claims*

Montes last three claims, that counsel failed to disclose a conflict of interest arising from the alleged withholding of services, failed to ask the Court to conduct an inquiry into a conflict of interest, and failed to seek a remedy for the alleged prejudice (§ 2255 Motion, at 6 (claims 9, 10, and 11)), as well as his catch-all second ground for relief of an actual conflict-of-interest, are all predicated on Montes's allegations that Nation requested fees and then withheld legal services when Montes did not pay. Because the record refutes Montes allegations that his counsel actually withheld legal services for Montes's failure to pay him, counsel could not have been deficient for failing to disclose the alleged conflict or ask the Court to conduct an inquiry regarding any conflict of interest.  Thus, all of these remaining grounds for relief must be denied.

For all of the above and foregoing reasons, upon review of the merits of all of Montes's claims for relief under § 2255, the Court concludes that all claims must be denied.

Therefore, it is **ORDERED** that the government's motion to dismiss (doc. 7) is **GRANTED** such that defendant David Montes's motion under 28 U.S.C. § 2255 is **DISMISSED WITH PREJUDICE** as barred by limitations; and alternatively, Montes's § 2255 motion is **DENIED**.

**SO ORDERED.**

**SIGNED** October 15th, 2014.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE